UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| PAMELA MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 17-294-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FLAGSTAR BANK, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Flagstar Bank's ("Flagstar") motion for judgment on the pleadings and Plaintiff Pamela Mills' motion for leave to file an Amended Complaint. [Record Nos. 9, 13] Mills' original Complaint was filed in the Clay Circuit Court and included four counts: (i) breach of fiduciary relationship; (ii) violations of the Kentucky Consumer Protection Act; (iii) breach of contract; and (iv) fraudulent misrepresentation. [Record No. 1-1] Flagstar removed the matter to this Court and filed a motion for judgment on the pleadings. [Record Nos. 1, 9] Mills now seeks leave to file an Amended Complaint that omits the breach of fiduciary relationship claim and adds factual allegations in support of her remaining counts. [Record No. 13-4] Flagstar opposes this request, contending that the proposed amendment would be futile because the Amended Complaint would not survive its pending motion for judgment on the pleadings. [Record No. 15] The Court agrees, and will grant Flagstar's motion for judgment on the pleadings. Mills' motion for leave to file an Amended Complaint will be denied for the reasons that follow.

-1-

**I.**

According to the proposed Amended Complaint, Mills purchased a home in 2003 for a total cash purchase price of approximately $75,000.00. [Record No. 13-4 ¶ 8] She took out a loan in the amount of $76,000.00, on or about December 30, 2009. The loan was secured by a mortgage on the property. [*Id.* ¶ 9] The mortgage was assigned to and serviced by Flagstar. [*Id.* ¶ 13] Mills made timely payments on the note until the summer of 2010. [*Id.* ¶ 15-16] At that time, she was an employee of the Kentucky Cabinet of Health and Family Services, and received diminished pay due to a State-imposed furlough. [*Id.* ¶ 15] As a result, Mills was approximately ten days late in submitting one of her payments. [*Id.* ¶ 15-16] When she tendered the late payment, Mills also included a payment covering the amount which would come due the following month. [*Id.* ¶ 16-17]

When the check did not clear her bank account, Mills began making telephone calls to Flagstar to inquire about the receipt of her payments and the status of her mortgage. [*Id.* ¶ 18] However, she was either unable to talk to a Flagstar representative, or was put on hold by a representative that never returned to the call. Consequently, Mills was unable to obtain the information she requested. [*Id.*] Flagstar returned Mills' check approximately sixty days after its submission together with a handwritten note indicating that only a payment for three months would be accepted. [*Id.* ¶ 19]

Mills received a notice from the Christopher Hill & Associates Law Firm (the "Hill Law Firm") shortly thereafter, informing her that her mortgage was in default and would be the subject of a foreclosure action. [*Id.* ¶ 20] Mills called the Hill Law Firm approximately one month after receiving the notice and spoke with Kelly Vaden. [*Id.* ¶ 21] Vaden informed Mills that, to resolve the foreclosure proceedings, she should apply for a loan modification

from Flagstar. [*Id.* ¶ 22] Mills called the number that the Hill Law Firm provided and requested an application for the loan modification. [*Id.* ¶ 23] She completed the application and sent it *via* facsimile to Flagstar along with sixty pages of required information including bank statements and paycheck stubs. [*Id.* ¶ 24] On several occasions over the next several months, Flagstar told Mills that it had not received this information. As a result, Mills was required to re-send the information multiple times. [*Id.* ¶¶ 26-27]

Mills attempted to inquire about the status of her application, but was either unable to connect with a Flagstar representative or was not provided with any substantive information. [*Id.* ¶ 28] She was never told whether she qualified for a loan modification. [*Id.* ¶ 29]

Flagstar pursued a foreclosure action regarding Mills' property during this same time period. [*Id.* ¶ 30] Mills did not defend in the action because, based on representations made by the Hill Law Firm, by Flagstar's agents, and in Flagstar's loan modification program materials and correspondence, she believed that seeking a loan modification was the proper means to stop the proceeding. [*Id.* ¶ 32] Flagstar filed a Report of Sale on August 14, 2012, and the foreclosure sale was confirmed by Order dated January 3, 2013, resulting in a deed divesting Mills of her interest in the property. [*Id.* ¶ 33]

Over a year and a half later, the Consumer Financial Protection Bureau ("CFPB") found that Flagstar had committed unfair acts or practices by impeding the borrowers' access to loss mitigation. [Record No. 13-7] Flagstar entered into a Consent Order with the CFPB on September 24, 2014, in which the CFPB found, in relevant part, that Flagstar: (i) failed to review loss mitigation applications within a reasonable time; (ii) withheld information the borrowers needed to complete their loss mitigation applications; (iii) improperly denied borrower requests for loan modifications and violated loss mitigation provisions found in

federal regulations; and (iv) committed deceptive acts and practices regarding its borrowers. [*Id.*; *see also* Record No. 13-4, ¶ 36] Flagstar agreed to pay $27.5 million to approximately 6,500 consumers whose loans it serviced, with at least $20 million to be distributed to approximately 2,000 consumers who were foreclosed upon as of September 4, 2014. [Record No. 13-7, ¶¶ 7, 106-110] Flagstar also agreed to help the CFPB determine the identity and location of the affected customers and create and maintain business records of the type of loan Flagstar serviced, the affected customers' information, and the status of the loan as of 2014. [*Id.*; *see also* Record No. 13-4, ¶ 39]

Mills received a letter from the CFPB dated October 2, 2015, informing her that she was identified as a borrower entitled to compensation under the settlement between Flagstar and the CFPB, and enclosing a check in the amount of $9,994.28. [Record No. 13-4, ¶ 37; Record No. 13-8] She received a second letter from the CFPB dated June 20, 2017, which included a check in the amount of $1,894.83. [Record No. 13-4, ¶ 37; Record No. 13-9] Both letters advised Mills that "[c]ashing the check enclosed does not stop you from making any legal claims that may be available to you." [Record Nos. 13-8, 13-9]

Mills alleges that she did not know that she may have any claim against Flagstar until receiving the letters from the CFPB, and that the payments she received failed to make her whole. [*Id.* ¶ 40-41] Mills filed the action in the Clay Circuit Court on September 28, 2017. [Record No. 1-1] Flagstar then removed the matter to this Court and filed a motion for judgment on the pleadings. [Record Nos. 4, 9] Mills now seeks leave to file an Amended Complaint asserting three counts: (i) violations of the KCPA; (ii) breach of contract; and (iii) fraudulent misrepresentation. [Record No. 13-4, ¶¶ 42-74]

## II.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court may allow a party to amend a complaint without the other party's consent, and should freely grant leave "when justice so requires." However, the Court need not grant a motion for leave to amend a complaint under Rule 15 if the amendment would be futile. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 519 (6th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Futility exists if "the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller*, 408 F.3d at 817 (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

The same standard of review applies to motions for judgment on the pleadings under Rule 12(c) and motions to dismiss under Rule 12(b)(6). *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Horen v. Bd. of Educ. of Toledo City School Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009). Under that standard, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Although the subject complaint need not contain "detailed factual allegations" to survive a motion to dismiss, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and

citation omitted).  Further, while the Court is required to accept all of the plaintiff's factual allegations as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

In general, where "matters outside the pleadings are presented to and not excluded by the court, the motion will be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, a court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims therein without converting the motion to one for summary judgment."  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (quotation marks and citation omitted).

### III.

The first count in Mills' proposed Amended Complaint claims that Flagstar violated the Kentucky Consumer Protection Act ("KCPA").  [*Id.* ¶ 47]  In support, Mills alleges that Flagstar "committed unfair, deceptive, and abusive practices when handing [her] mortgage and loss mitigation, and continued its unfair and abusive acts through its payment of only pennies on the dollar to [Mills] via the CFPB fund for the losses caused by Flagstar's actions."  [Record No. 13-4, ¶ 46]

The purpose of the KCPA is "to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services[.]"  KRS § 367.120.  To this end, the KCPA declares unfair, false, misleading, or deceptive acts or practices in the conduct of trade or commerce to be unlawful.  KRS § 367.170.  The KCPA further provides a private right of action for any person who purchases or leases goods or services primarily for personal, family, or household purposes, and is harmed by a violation of KRS § 367.170.  KRS §§

367.170, 367.220.  The right of action accrues when the person "suffers any ascertainable loss

of money or property, real or personal, as a result of the use or employment by another person

of a method, act or practice declared unlawful by KRS 367.170."  KRS §§ 367.170, 367.220;

*see also Lucky v. Ky. Bank (In re Lucky)*, Case No. 05-54625, 2011 Bankr. LEXIS 5734, at

*22 (Bankr. E.D. Ky. Mar. 21, 2011).  A person alleging a violation of KRS 367.170 must

bring an action within two years after the violation.  KRS 367.220(5).

Flagstar contends that, because the foreclosure sale was confirmed on January 3, 2013,

and Mills did not file this action until September 28, 2017, any ascertainable loss of money or

property from Flagstar's handling of Mills' mortgage and loss mitigation arose more than two

years before Mills brought her KCPA claim.  Therefore, her claim is time barred.  [Record

Nos. 10, pp. 5-6; 14, pp. 2-3; 15, pp. 4-6]  Mills responds that Flagstar's KCPA violation did

not end with the foreclosure sale in 2013, but continued with its payments to her *via* the CFPB,

which failed to make her whole.  [Record Nos. 13-4, ¶ 46; 17, pp. 2-4]  As a result, Mills

argues that the outside date to bring her claims under the KCPA is two years after June 20,

2017, when she received her final check from the CFPB.[1]  [*Id.*]

---

[1]    Mills also states that she was "unaware of Flagstar's possible violations of mortgage
servicing laws and regulations until after her receipt of the CFPB letter to her dated October
2, 2015."  [Record No. 13-4, ¶¶ 41, 47]  However, when Mills became aware of Flagstar's
alleged violations is irrelevant to the statute of limitations period.  *Cook v. State Farm Mut.
Auto. Ins. Co.*, No.2002-CA-000801-MR, 2004 WL 2011375, at *3-4 (Ky. Ct. App. Sept. 10,
2004).  "In enacting KRS 367.220(5), the Kentucky legislature did not state 'any person
bringing an action under this section must bring such action within two (2) years from the date
of the violation of KRS 367.170 *or from the date when the cause of action was, or reasonably
should have been, discovered*."  *Id.* at 4 (alterations and quotations omitted; emphasis added).
Courts have "declined to graft the discovery rule" onto the two-year statute of limitation
provided by the express language of the statute.  *Id.* at 3 (citing *Sanderson v. Reassure Am.
Life Ins. Co.*, 97-cv-276, 1997 U.S. Dist. LEXIS 18250 (E.D. Ky. 1997)).

Mills' KCPA claim centers on Flagstar's alleged use of "unfair, deceptive, and abusive practices when handling [her] mortgage and loss mitigation[.]" [Record No. 13-4, ¶ 46] Any injury Mills suffered as a result of Flagstar's alleged wrongful foreclosure and mishandling of her loan modification was fully realized when Flagstar foreclosed on her home and did not provide her with a loan modification. *Bennett v. Ford Motor Co.*, 5:07-cv-115, 2008 WL 4000558, *3 (W.D. Ky. Aug. 25, 2008). Although Flagstar's payments *via* the CFPB fund may not "fully compensate [Mills] for her losses caused by Flagstar's mishandling of her loan modification and wrongful foreclosure on her home," [*Id.* ¶ 40], Mills has not alleged that paying $27.5 million pursuant to a Consent Order with the CFPB itself constitutes an unfair, false, misleading, or deceptive act or practice. KRS § 367.170. And to the extent Mills alleges that Flagstar continued its earlier violation by failing to make her whole, "any continued violation was not coupled with a corresponding injury." *Bennett*, 2008 WL 4000558 at *3.

In short, the statute of limitations for Mills' KCPA claim began to run on January 3, 2013, when the foreclosure sale was confirmed. [Record No. 13-4, ¶ 33] Mills did not file her Complaint until over four years later, on September 28, 2017. [Record No. 1-1] Accordingly, her KCPA claim is time barred, and will be dismissed.

**IV.**

The next count in Mills' proposed Amended Complaint alleges breach of contract. Mills' arguments essentially fall into two areas. First, she claims that Flagstar breached the parties' mortgage and note, and the implied covenant of good faith and fair dealing, by improperly handling her loss mitigation application, failing to consider her loss mitigation application in good faith, failing to keep her informed of her rights and options regarding loss mitigation, and causing her to believe the way to halt the resulting foreclosure action was by

seeking a loan modification. [Record No. 13-4, ¶ 54-60, 62-63] Second, she contends that Flagstar breached the parties' mortgage and note, and the implied covenant of good faith and fair dealing, by rejecting her ten-day-late payment. [*Id.* ¶¶ 52, 62]

Mills' first set of arguments fails to plausibly allege that Flagstar breached any contractual duty. To recover for breach of contract, Mills must show "the existence and the breach of a contractually imposed duty." *Strong v. Louisville & Nashville R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931). Mills has not identified any provision in the mortgage or note requiring Flagstar to review her loss mitigation application or provide loss mitigation assistance. Flagstar could not have breached the parties' contract by failing to evaluate her application for a loan modification or by denying her application in the absence of such a provision. *Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 881 (E.D. Ky. 2015).

Similarly, Mills' argument that Flagstar had an affirmative duty to work in good faith with her to apply for foreclosure alternatives and to keep her informed of her rights and options is unavailing. Mills initially alleged that Flagstar had such a duty due to the fiduciary relationship between the two. [Record No. 1-1, ¶¶ 19-32] However, in its motion for judgment on the pleadings, Flagstar correctly argued that, "under Kentucky law[,] a mortgagee-mortgagor relationship does not typically give rise to a fiduciary relationship," *GMAC Mortg., LLC v. McKeever*, 08-cv-459, 2010 WL 2639828, *5 (E.D. Ky. June 29, 2010), and that "mortgage contracts need an express provision to create such a relationship." *Forsythe v. BancBoston Mortg. Corp.*, 135 F.3d 1069, 1077 (6th Cir. 1997). [Record No. 10, pp. 4-5]

As a result, Mills conceded that her claim for breach of fiduciary duty should be eliminated as a separate count, and attempted to recast her argument as a breach of contract claim. [Record No. 12, p. 1] But Mills has not identified any express term of the contract that

required Flagstar to work in good faith with her to apply for foreclosure alternatives or to keep her informed of her rights and options. As a result, she has failed to allege "the existence and the breach of a contractually imposed duty," and her re-cast argument for breach of contract fails as well. *Strong*, 43 S.W.2d at 13.

Mills does identify express provisions of the note and mortgage that are relevant to her second set of claims. The note contains several provisions that appear to contemplate that Flagstar would accept late payments. The note provides that if Flagstar did not receive "the full amount of any monthly payment by the end of 15 calendar days after the date it is due," Mills would be required to pay a late charge in the amount of 5% of her overdue payment of principal and interest. [Record No. 10-1, ¶ 6(A)] If Mills did not "pay the full amount of each monthly payment on the date it is due, [she would] be in default." [*Id.* ¶ 6(B)] And if Mills was in default, Flagstar was entitled to "send [her] a written notice telling [her] that *if [she did] not pay the overdue amount by a certain date*, [Flagstar would] require [her] to immediately pay the full amount of Principal which ha[d] not been paid and all the interest that [she] owe[d] on that amount." [*Id.* ¶ 6(C) (emphasis added)]

However, the mortgage contains language indicating that Flagstar was not required to accept any late payment. Flagstar was entitled to "return any payment or partial payment if the payment or partial payments [were] insufficient to bring the Loan current." [Record No. 10-1, ¶ 1] And if Flagstar "receive[d] a payment from [Mills] for a delinquent Periodic Payment which include[d] a sufficient amount to pay any late charge due, the payment *may* be applied to the delinquent payment and the late charge." [*Id.* ¶ 2 (emphasis added)]

Mills argues that because her ten-day-late payment was sufficient to cover the payment due plus any late fee, as well as the next month's payment, Flagstar violated the terms of the

contract by refusing to accept her check. [Record No. 17, pp. 5-6] Further, she contends that, by holding onto the check for sixty days, failing to respond to her phone calls, and then returning the check and requiring three months' payment to bring the loan current, Flagstar breached the implied covenant of good faith and fair dealing. [*See id.* at 5-8] And because she submitted a payment that was sufficient to bring the loan current, she argues that the notice she received informing her that she was in default was incorrect. [*Id.* at 6]

Flagstar responds that this set of arguments fails to plausibly state a claim for breach of contract or the implied duty of good faith and fair dealing. [Record Nos. 10, pp. 6-9; 14, pp. 4-6; 15, pp. 6-9] Further, it argues that even if it did state a claim, the claim should be dismissed for failure to comply with the following provision of the mortgage:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or a lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

[Record No. 13-2, ¶ 20]

Mills does not claim that she complied with this pre-suit notice requirement. Instead, she argues that, "[g]iven that the property was foreclosed upon in 2013, there is no possible corrective action, and providing notice would be a futility." [Record No. 17, p. 8] Mills has not disclosed, and the Court has not found, any controlling authority excusing a contractually-imposed notice requirement under these circumstances. Instead, Mills relies on an unrelated nineteenth century Supreme Court case providing that "[t]he law will not require a futile notice." [*Id.* (quoting *The Convoy's Wheat*, 70 U.S. 225, 229 (U.S. 1865)]

It is well established under Kentucky law that "a party failing to perform fully an entire condition precedent, cannot maintain an action on his contract." *Jewell v. Blandford*, 37 Ky. 472 (1838). It is also "well settled that parties may validly contract for a notice of claim to be given . . . as a condition to the maintenance of suit." *See Loundon v. Morrison-Knudsen Co.*, 137 F. Supp. 642, 643 (S.D.N.Y. 1955). And when "notice [is] a condition precedent to [the plaintiff's] right of action, it [is], as a matter of course, essential that [the plaintiff] allege the fulfillment of the condition precedent or a sufficient excuse for its nonfulfillment." *Amber Mill. Co. v. Kentucky Macaroni Co.*, 292 Ky. 831 (1942). "A right of action requiring notice as a condition precedent cannot be enforced unless the notice provided for has been given." *Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985).

Mills was required to provide Flagstar with notice of any alleged breach of contract before filing suit. [Record No. 13-2, ¶ 20] She failed to satisfy that condition. Although Mills contends that notice would be futile because the foreclosure sale has already occurred, providing pre-suit notice would still fulfill a meaningful purpose by allowing the parties to pursue an out of court settlement and avoid the costs of litigation. Further, the alleged futility of providing notice at this time appears to be a result of Mills' own failure to provide notice of the alleged breach before the foreclosure sale. Although Mills alleges that she was "unaware of Flagstar's possible violations of mortgage servicing laws and regulations until after her receipt of the CFPB letter to her dated October 2, 2015," she was aware of the issues regarding her late payment several years earlier, as evidenced by her repeated calls to Flagstar and the Hill Law Firm. [Record No. 13-4, ¶¶ 18, 21, 23, 28, 41, 47] Mills' failure to provide notice at that time cannot excuse her failure to do so now.

Accordingly, Mills' first set of breach of contract claims will be dismissed with prejudice for failure to plausibly allege that Flagstar breached any contractual duty, and her second set of claims will be dismissed without prejudice for failure to provide pre-suit notice.

**V.**

The final count in Mills' Amended Complaint alleges fraudulent misrepresentation. Fraudulent misrepresentation under Kentucky law requires proof of the following six elements:

> (1) [T]hat the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.

*Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). The misrepresentation "must relate to a past or present material fact," and cannot be a statement of opinion or a prediction. *Id.* (citing *McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 172 (Ky. 1955)). Additionally, the plaintiff's reliance on the misrepresentation "must be reasonable." *Id.*

Further, "[b]ecause claims based on fraud pose 'a high risk of abusive litigation,' a party making such allegations 'must state with particularity the circumstances constituting fraud or mistake.'" *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 569 n.14 and Fed. R. Civ. P. 9(b)). "This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Id.* "At a minimum, [p]laintiffs must allege the time, place and contents of the misrepresentations upon which they relied." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008).

Mills identifies several allegedly false representations. First, she claims that Flagstar falsely stated that it was necessary to send three months' payment, and the Hill Law Firm falsely stated that she was in default, even after she brought the loan current by tendering her ten-day-late payment. [Record No. 13-2, ¶¶ 17, 19-20] However, any claim based on these alleged misrepresentations "arises from the other party's actions pursuant to [the mortgage]," and is subject to the pre-suit notice requirement. [Record No. 13-2, ¶ 20] Additionally, Mills does not allege that Flagstar induced her to act upon these misrepresentations or that she relied upon them. Although these statements allegedly caused Mills to call Flagstar and the Hill Law Firm, they did not cause her to seek a loan modification rather than defending in the foreclosure action. [*Id.* ¶¶ 21, 23] As a result, they cannot support a claim for fraudulent misrepresentation.

Mills also alleges that over the course of multiple telephone conversations in the months following the notice of foreclosure, Kelly Vaden of the Hill Law Firm told Mills that "she should apply for a loan modification from Flagstar and that a loan modification would resolve the foreclosure proceedings." [*Id.* ¶¶ 21, 22] Mills contends that Vaden's statements and the representations in Flagstar's loan modification program materials led her to believe that "Flagstar's loan modification program was legitimate" and that "Flagstar would review [her] application in good faith and make a timely determination of whether or not [she] qualified for a loan modification." [*Id.* ¶ 25] Mills claims that, in reliance on these statements, she did not defend in the foreclosure action and instead pursued a loan modification, believing that this was the method to resolve the foreclosure action. [*Id.* ¶¶ 17-22, 25-29] Additionally, Mills asserts that in the course of handling her loan modification application, Flagstar falsely claimed that it had not received documents Mills had previously faxed, and required her to re-send

them, while at the same time pursuing a foreclosure action regarding her property. [*Id.* ¶¶ 26-30] Ultimately, Mills did not defend in the foreclosure action, resulting in the loss of home and equity in the amount of approximately $80,000.00. [*Id.* ¶¶ 31, 33]

Mills' allegations are similar to the allegations in *Thompson v. Bank of Am.*, 773 F.3d 741, 746 (6th Cir. 2014), where the plaintiff claimed that her mortgage lender improperly requested documents that she had previously provided and "fraudulently induced her to seek modification . . . to drive her into foreclosure by giving her the run-around." In *Thompson*, the plaintiff contended that her mortgage lender's statements fraudulently caused her to believe that the lender would comply with the applicable loss modification guidelines, and that the lender unfairly required her to apply for modification after modification in order to foreclose on her property. *Id.* The Sixth Circuit held that these allegations failed to identify a misrepresentation of material fact by the lender, and were consequently insufficient to state a claim. *Id.* at 753. The court explained that a plaintiff fails to adequately plead a claim for fraudulent misrepresentation where she does not allege that the defendant "promised to modify her payments," but instead alleges that the defendant informed her that she may qualify for a loan modification and then "stonewalled her during the modification process." *Id.*

That is precisely the situation here. The allegation that Flagstar unnecessarily requested documents it had already received is insufficient because "[a] request for documents is not 'faulty information meant to guide others in their business transactions.'" *Id.* And Vaden's statement that Mills "should apply for a loan modification from Flagstar and that a loan modification would resolve the foreclosure proceedings" was not a "promise[] to modify her payments." [*Id.* ¶ 22] Even if Mills relied on these statements to her detriment, they do not constitute misrepresentations of past or present material fact, as required under Kentucky law.

*Flegles, Inc.*, 289 S.W.3d at 549. Mills has not specifically identified any other statement made by Vaden or in Flagstar's loan modification materials, when and where that statement was made, and why that statement was allegedly fraudulent, as required by Rule 9(b). And she has not alleged that Flagstar or the Hill Law Firm advised her not to defend in the foreclosure action. As a result, Mills has failed to sufficiently plead a claim for fraudulent misrepresentation, and her fraudulent misrepresentation claim will be dismissed.

**VI.**

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1.      The defendant's motion for judgment on the pleadings [Record No. 9] is **GRANTED**.

2.      The plaintiff's KCPA and fraudulent misrepresentation claims are **DISMISSED** with prejudice. The plaintiff's breach of contract claim is **DISMISSED**, in part, with prejudice and, in part, without prejudice, as outlined in Section IV of this Memorandum Opinion and Order.

3.      The plaintiff's motion for leave to file an amended complaint [Record No. 13] is **DENIED**, as amendment would be futile.

This 26th day of February, 2018.



Signed By:

*Danny C. Reeves* DCR

United States District Judge